Good morning. Welcome to the 9th Circuit to our Seattle sitting. I know none of us is in Seattle, but this is our Seattle sitting. Welcome to the 9th Circuit. We're pleased to have you here. We've got two argued cases this morning. The first is the consolidated appeal of United States v. Thompson and United States v. Fincher. It's set for 10 minutes per side. How did you decide to arrange your argument on the appellant side? Your Honor, for appellants Thompson and Fincher, Steve Hormel will argue five minutes on issue number one and Mr. Vieth will argue five minutes on issue number two. Issue number one is the grand jury issue and issue number two is the forfeiture issue. Got it. Okay. And then how do you want to save your rebuttal time? I'm going to try to be as brief and concise in my opening remarks and hope to leave at least a couple of minutes for rebuttal. Okay, we'll try to help and we'll make sure you get a chance to say everything you need to say. Appreciate it. Are we set? I think we're all set. Judge Panfield, can you hear me? Judge Rawlinson, can you hear me? Yes. Fine here. Okay, and I can hear both of you. So yes, we're all set. You have the floor. Okay, thank you. Steve Hormel on behalf of Appellant Thompson, I'm also arguing on behalf of Mr. Fincher and argue our issue number one relating to the violation of Fifth Amendment right to grand jury. Essentially, Mr. Thompson and Mr. Fincher's position is that they were indicted by the grand jury under the general conspiracy statute 371 because the government presented to the grand jury a conspiracy that alleged an offense against the United States. The underlying substantive offense was wire fraud and also alleged various overt acts. Excuse me, I'm sorry to interrupt this. It's a little hard to go back and forth. Does the indictment so state that he's been indicted, that they've been indicted under 371? No, the heading says 1343 and 1349. But the body of the charge itself lists the essential elements of a 371. Does it also list the essential elements of the two sections under which the indictment is actually labeled? Well, I don't believe so. Because what it alleges is, did knowingly and willfully combine conspiring confederate and agree to commit an offense against the United States, listing that offense as wire fraud and violation of 1343. So, even though they list in the body or in the heading a 1349, in actuality they're alleging a conspiracy that is a crime against the United States and the substantive offense under that is wire fraud and they also allege overt acts which are unique to the 371 conspiracies. So, our position is, even though the government might have believed that it was a 1349, they in actuality presented to the grand jury and the grand jury returned a 371 conspiracy. And so, our position is that Mr. Thompson, Mr. Fincher should be remanded back to the district. There's something I'm not following here, counsel. This is Judge Kleinfeld. Okay. If the indictment says 1343 and 1349 and the proof makes out a case for 1343 and 1349 and the judgment says it's a conviction under 1343 and 1349, what does it matter that there's surplusage in the indictment that would also make out a case under 371? Because the critical surplusage are elements of the 371 conspiracy. The point of the indictment is just to see if there's enough evidence to satisfy the grand jury to charge and to give the defendant notice of what he has to defend himself against. And it seems like you have the notice from the labeling of the indictment with the crimes that the man was convicted of. What am I missing here? Well, the notice is the specific language and elements alleged in the count one of the indictment. And that is it alleged a conspiracy against the United States and it included the Overt Act. And so the notice is a 371 conspiracy, not a 1349, even though it appears that the government believed they were presenting a 1349. In actuality, the grand jury was considered and returned an indictment charging the lesser offense. And in violation of the general principle set out in ex parte bank as specified and clarified in the United States versus Miller at 471 U.S. page 142, starting at page 142. And clearly Miller states that no matter what the court believed or the prosecution believed, if the grand jury is presented and returns an indictment on a specific offense, it's neither up to the court nor the prosecution to change that offense. The remedy would have been once they realized they alleged an Overt Act was to go back to the grand jury and correct it, which they didn't do. They did this by amendment. This is Judge Rawlinson. Was this argument raised before the district court? No, Your Honor. In fact, there was no objection to the instruction. So we are operating under a plain air standard. So your position that it could have been changed, there was no opportunity given for that because this matter wasn't raised before the district court. That is true, and that's why we're under a plain air status. But it's pretty clear from the United States Supreme Court precedent that federal statutes that don't include Overt Acts don't need an Overt Act to be alleged. And in this case, both critical elements of 371 were alleged, an offense against the United States and an Overt Act. Okay. Thank you very much. You've now exceeded slightly your five minutes. We'll make sure you finish. Thank you. Why don't we hear from your co-counsel? All right. Good morning, and may it please the court. My name is Nick Veith, and I represent Mr. Fincher. And I'll be addressing the forfeiture issue. I'd like to start with the Honeycutt decision. And that decision holds, and I think is very illustrative here, because it does cut out joint and several liability for co-conspirators. Granted, this was a drug case, and we're dealing with a budget. Could you speak to the differences in the language of the statutes? The United States has urged that differences in the language should limit Honeycutt to the statute it spoke to and not extend it to this statute. And, Your Honor, you know, I guess I would just defer this court. I'm looking at it would be ECF number 378. It was a filing by Judge Rice, and that's found in our excerpts of record, page 88, where Judge Rice adopted our reasoning of Honeycutt that Honeycutt applied to all forfeiture provisions. And here, Judge Rice tells us, and I agreed with it, that, quote, while interpreting a nearly identical worded forfeiture statute, the Supreme Court in Honeycutt rejected joint and several liability against multiple defendants. And that was his holding in the preliminary order of forfeiture in this matter. What we quarrel with, Your Honor, is the application after that, that being that the court then ordered Mr. Thompson to pay the full sum owing under the forfeiture of $2,015,000. I should make it clear. What I'm really asking about is not what Judge Rice's view was or whether his view evolved. What I'm asking for is authority that you have that would counter the authority the government has presented that Honeycutt is dependent on the language of the statute and does not apply to all forfeiture cases. You know what, Your Honor? I would start with the Honeycutt decision in and of itself, and I'm pointing the court to page 1631, where the Honeycutt court tells us that criminal forfeiture statutes empower the government to confiscate property derived from or used to facilitate criminal activity. Such statutes serve important government interests as separating a criminal from ill-gotten gains, returning property in full to those wrongfully deprived or defrauded of it, and lessening the economic power of criminal enterprises. And then the Honeycutt court turned to joint and several liability and talks about that it's a creature of tort law. And then the Honeycutt court went on to apply Section 853. Now, I'll quickly address the letter that was recently provided to this court outlining what the 11th Circuit and the 2nd Circuit have done with, you know, this distinction between 981 and 853 and whether or not Honeycutt broadly applies or only applies to 853 cases. And, Your Honor, in reading back, and I'll point out the 11th Circuit case first, that's the United States v. Fares. And in that case, first off, there was no objection at sentencing. We vehemently objected. So there was a plain error. We're under a different standard of review, that being de novo. But the Singari court said in applying the facts there, they were dealing with a married couple and that there was absolutely no evidence that the married couple, Mr. and Mrs. Singari, split their co-earned criminal proceeds. And that's very important here because it is clear from the fact of our case that we have three co-conspirators, Mr. Fincher, Mr. Nixon, and Mr. Thompson. Mr. Fincher was ordered to pay $631,500. Mr. Thompson was ordered to pay the full amount, that being the $2,015,000. And Mr. Nixon, the third co-conspirator, was ordered to pay zero for forfeiture purposes. The next case that the government talked about and outlined. This is Judge Fletcher. I'm sorry to interrupt but the time is running. In the case we have here, in the case we have here in front of us, was there a time at which the defendant against whom the full amount was assessed was in fact, had he actually obtained that perhaps in a joint account with somebody else? That is to say there was a time when he actually controlled that amount of money? Your Honor, and that is, you know, I was looking back in the record and the testimony there. And one of the attorneys, I believe it was Peter Block, and I'll point the court to the excerpt of record page 78. And that's where Judge Rice, our district court, you know, pointed out that Peter Block, the lawyer that was holding these monies, never testified because he ended up dying. And that he believed that there was no, this being Judge Rice, that there was no testimony on who owned this trust account or who the client was. And so that's why we would ask this court to remand, to get clarification on who owned these accounts, who directed these accounts. Let me ask, if I could ask the question slightly differently. What I'm trying to figure out as a matter of law, not just as a matter of fact, with reply to this case, imagine for a moment,  imagine that we've got two defendants. The money comes into a joint account that both of them control, and then the money goes out again. But there was a point at which the money came to both of them. How am I supposed to read Honeycutt? Honeycutt is actually much easier because the money went to different places. We never had a question of the joint accounts. What do we do with the question? If they do have either a joint bank account or some other way in which the money is held, which more than one of the defendants have access to the funds, what's the use? And again, Judge, I think this holding, the 11th Circuit holding and then also the 2nd Circuit holding speak to that. If there is evidence that there was no split up of the proceeds, or say in that Jurgensen case, that's the 2nd Circuit case that the government points out in their letter, where they have two individuals, Mr. Gosch and Mr. Jurgensen, were quote-unquote co-chief executives, and they approved every transfer of money jointly. They were, for lack of a better term, they were complete partners, just like the married couple out of the 11th Circuit. In our situation, we are vastly different. These individuals were acting somewhat in concert, but they were not holding accounts, all three of them together, nor were they directing, all three directing at the same time where the money should go or who actually had their names on the trust account. And I believe I'm out of time, Judge. Yeah, I think you're well over. Why don't we hear from the government, but we'll give you a couple of minutes. The two of you together, a couple of minutes to respond. When you're ready, Counsel. Sorry. Are you waiting for me to give you the go-ahead? When you're ready, Counsel. Yes, Your Honor. May it please the Court. Joseph Derrick on behalf of the United States. I'll be briefly addressing the Court's questions regarding the constructive amendment. I think Judge Kleinfeld's question hits the nail right on the head. The central touchstone of this doctrine is notice, and here the indictment, superseding indictment, clearly put both defendants on more than adequate notice and defense counsel on adequate notice of the crime charge. It's mentioned, the statute itself is mentioned twice in the indictment, quote, conspirator, but guilty under that same indictment under that charge. The eight or so attorneys that touched this case, including the judge, all recognized that the conspirator was to charge under 1349. Unless the Court has any additional questions on the constructive amendment issue, I'll turn the remainder of my argument over to my co-counsel. All right. Thank you. Good morning, Your Honor. Brian Donovan on behalf of the United States. May it please the Court. I'm going to touch on the forfeiture issue in this matter. Help me out on something with the forfeiture, Counsel. This is Judge Kleinfeld. The first thing I always think of in a forfeiture case, I used to get a lot of them when I was a district judge involving ships that had been engaged in some sort of illegal commercial fishing. And the first thing I always think of is Calera Toledo because it was a striking case. It held that innocence is no defense. In that case, you'll recall the owner of a yacht leased it to some people who used it for dope dealing. The Court decided the case on the assumption that he was totally innocent. He was not a part of the scheme. He didn't know about it. He had no idea his yacht would be misused that way. But the forfeiture of his yacht nevertheless stood up. And the reason it stood up is that the Supreme Court explained that forfeiture is not like a fine. It's not like a penalty. It's not like restitution. It's the property right transfers at the moment of the commission of the criminal act from whoever used to be the owner to the government. So the tainted property, as they call it, is the government's. It's not being taken from anyone. And the way Honeycutt uses that just by assumption is that, well, as they say, 853 limits forfeiture to tainted property. I lost my connection for a moment. I'll go back and re-hear the piece of the argument that I missed. We didn't do anything. We didn't. We just paused until you were back on. Okay. Okay. The point that I have is. I'm sorry? As President Nixon used to say, I'm back. Okay. The question I have is, you've got this language in Honeycutt, and it traces all the way back to the Palmyra in 1827, that forfeiture is an action in rem against the tainted property itself. And you've got Calero Toledo saying that innocence is no defense for that reason. It's just against the dirty property that's been dirtied by the crime. And you've got Honeycutt proceeding on the same basis. I don't understand how the forfeiture can proceed against people, which is what joint and several liability does, as opposed to against the dirty money. Well, if you're asking about the longstanding tradition of forfeiture money judgments, in our briefing we did discuss. No, I'm not. I'm asking why. I'm not asking that. I'm asking why the reasoning of Honeycutt would not have to apply more broadly to all forfeitures rather than being limited to 853, the section that happened to be before the court in that case. If you're asking whether we're taking the position that Honeycutt does not apply to 981A1C, we filed our Rule 28J letter to inform the court of the way that some of the other circuits have been ruling on that question. The other circuits have split. The other circuits have divided on it. You've got two circuits that have said that Honeycutt applies to all forfeitures. And you've got, I think, two that say it doesn't. If I can correct you, it's three that say it does not, and then one, the third circuit that says it does. But the government wanted to highlight that issue for the court just so the court is aware of it. We did not make an affirmative offering to that effect at the district court level. We're not necessarily making it today. I think we can get to the same result as Honeycutt applies to 981A1C forfeitures, which is a statute issue today. Or if it was limited to 853 forfeitures, like the Singari decision in our Rule 28J letter, and the Sixth and Eighth Circuit decisions that came out prior. Okay. Honeycutt applies to this statute. Why wouldn't it apply to this case? Or why wouldn't it require a remand in this case? I don't think it would require a remand, Your Honor, because I don't think the court district court ran a file of Honeycutt. Honeycutt requires the court to make individualized, specific findings about what amount each person obtained through their participation in the fraud. Judge Fletcher referenced Honeycutt in the drug conspiracy. It was a very clean case where one person got everything and one person got nothing. Here, the district court did exactly what Honeycutt mandated. It made the fact-specific findings, those are throughout the record, about what each person obtained through the fraud. Its preliminary order of forfeiture is very detailed. We had a very lengthy hearing on that. For Thompson, he either personally obtained or he controlled accounts that that money went into. All of the money, $2,015,000. In regards to Fincher, there's a $631,000 money judgment. The court detailed through, and I would note for Fincher, they did not intend. Let me back up to Thompson. I'm thinking about the hypothetical that Honeycutt gave about the college student selling drugs on campus. What I'm thinking is he may be analogous to Thompson because when he sells, let's say it's marijuana. I don't remember what it was. When he sells the marijuana, the purchaser pays him the full price of the marijuana. He has the money in his hands, but he turns the money over to his wholesaler who just pays him a salary of $300 a month. I think it was $300 a month. For the time between when he sold the marijuana to another student and the time that he turned it over to his wholesaler, he did, in fact, hold and control physically the money. He might be taking an unreasonable risk if he didn't turn it over to his wholesaler. Nevertheless, during that time period, he'd own or control it. I don't see what the difference is between that and a criminal who holds and controls the money before the split. Well, I think the hypothetical in Honeycutt, I'm not entirely sure how they thought the money was being controlled, but I know in the facts of this case, the money was being directed. They were working in concert to co-earn the money. They were jointly earning the money. The money was going, large chunks of the money, not all the money, which we concede, but large chunks of the money were going to bank accounts held in escrow by attorneys that were retained and controlled by Thompson and Fincher at times together. At times, it was just Thompson. At times, it was just Fincher. Then that money was then going into their own, either directed by them into their own entities, into their own personal bank accounts, or to pay off other debts. I would note that for Fincher, they didn't contest up to $471,000 of that money, Judge. It was only the $160,000 from the Mulgrew fraud. It was the North Idaho fraud. That was the only portion that they contested in the record. In that case, the district court found that Fincher participated in the control of the attorney in the escrow account with whom the money was deposited. Being able to control an attorney who's operating an escrow account on your behalf is controlling the fraud proceeds. That's the thing. This is Judge Fletcher. Sorry to interrupt. If it turns out that two people, two of the co-defendants, are simultaneously able to control, and they, therefore, are both liable under your theory to forfeiture for the full amount that's being held by that third-party attorney, this is not joint and several liability in the government can go after either one of them for the full amount, just as you can do in joint and several liability. Well, I think we could go after the defendant for the amount that the district court finds that they personally obtained. I agree. Going back to that hypothetical about the marijuana dealer and the college student, Honeycutt laid out how you could have to separate those amounts. The mastermind, the ringleader, gets the $3 million. The college student gets, I think, a $3,600 over a year's salary. The court doesn't actually address how you're supposed to deal with the fact that that aggregates more than the total fraud proceed or the total tainted property. I think the way that we- I don't think Honeycutt actually directly answers the question we have here in front of us. It hints at it. I don't think it directly answers it. Correct. And I think that some circuits have gone to say that Honeycutt doesn't apply to 981A1C, which is not really the position we're taking here. But I think what we conceded to the district court is that the recovery by statute is still capped at the amount of the fraud proceeds, in this case, $2 million. And the government's recollection effort ensures that that isn't exceeded. And if the defendants need a remedy, for some reason we're able to collect more than the total fraud proceeds, there's a Rule 41 motion available to them for the return of property. But I agree with Judge Fletcher. We don't have a clear answer in Honeycutt as to the aggregation issue. Okay. Who wound up with the money? I mean- Oh, sorry. Please ask the question. Sorry. Go ahead. No, no, no. I just thought we were out of time. But so long as we've got questions, please go ahead, Judge Kleinfeld. Who wound up with the money and how much? Well, the money was distributed throughout the conspiracy. If you give me one second, Your Honor. What I'm trying to find out is where the dirty money came to rest. The dirty money came to rest in all sorts of different places. Some of it ended up in Mr. Fincher's bank account directly. Some of it ended up in Mr. Thompson's bank account. Some of it ended up in Pin Oak LLC, which was Mr. Fincher's LLC. Some of it ended up in other LLCs controlled by Thompson or they were- Well, the dirty money, under the theory the Supreme Court has laid down, is in the nature of contraband. The title is in the United States the whole time. So it really matters how much dirty money wound up where. Well, we do have that in the briefing, and we can submit a supplemental briefing if you like, Your Honor. But I think that the idea of obtaining and possession and control isn't- the end route to that money isn't necessarily the calculus. It's defrauding the victim and obtaining that tainted fraud proceeds. If you're a criminal who's obtaining, stealing money from somebody and then you go to a restaurant and you go to a sporting event or a concert, the end route of where that money goes isn't determinative of the forfeiture. It's the obtaining of the proceeds of that forfeiture, of the tainted funds. And I think that's where Honeycutt says you have to make an individualized, fact-specific finding as to how much each person obtained, because 853 uses the word person obtained. And the district court in this case did that sort of individualized fact-finding mission. And those facts are subject to clear error. They're not contested. And the court did what Honeycutt mandates it do. Where should I look again for the findings that will satisfy this Honeycutt requirement? If I can point you, just one second, Your Honor, to the preliminary order forfeiture, which is generally found at ER 91 to 93. Thanks. And then SER 204 and then 206 to 222. Thanks. Okay. Any further questions? That's it. Thank you very much, counsel. Thank you, Your Honor. We've allowed the government to go over by some time. Let's put two minutes on the clock for rebuttal. This is Mr. Hormel for Issue 1. The only thing I'd like to stress is that this case is different than the other cases cited in United States v. Miller at 471 starting at 142, and that is the district court, by taking the Overt Act out and instructing on a 1349, literally changed the charge, whereas in Miller they simply were narrowing to the factual allegations regarding the scheme, and so they weren't changing the nature of the offense. And that's all I have to say. Okay. On the forfeiture question? Yes, and this is Nick Veith. Briefly, I think the court hit the nail on the head in their question on how much and where did this dirty money end up. That is the question that still needs to be resolved, and that's why we need to go back to the district court to determine how much money fell into Mr. Fincher's hands, how much money fell into Mr. Thompson's, and how much fell into Mr. Nixon's. And unless we have any questions, that's all I have. I see no questions. Thank both sides for your argument. It's been a very helpful argument in this case, and it is now submitted for decision. Thank you very much, counsel. Thank you.
judges: Kleinfeld, W. Fletcher, Rawlinson